**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**December 11, 2013**

# In the Court of Appeals of Georgia

A13A1560. AIM DMC ONE, LLC et al. v. THE FRANK GATES     DO-080
      SERVICE CO., et al.

DOYLE, Presiding Judge.

The trial court dismissed AIM DMC One, LLC's ("DMC"), AIM Disability Management and Consulting, Inc.'s ("AIM"), and Mark Easler's (collectively, "the plaintiffs") case against The Frank Gates Service Co., Forte, Inc., and Risk Management Solutions (collectively, "the defendants") on the grounds of improper venue and jurisdiction based on a forum selection clause contained in an employment agreement between some of the parties. The plaintiffs appeal, arguing that the defendants waived their venue and jurisdiction defenses by failing to raise them at the earliest possible opportunity. We affirm in part and reverse in part, for the reasons that follow.

The record reflects that Easler owned AIM and was also a member of DMC, the purpose of which was to purchase and manage an office condominium complex in Buckhead. In March 2009, DMC leased property in Buckhead to Forte, Inc., which allowed The Frank Gates Service Co., to use the property, with the acquiescence of DMC. According to Easler, he later agreed to sell DMC to The Frank Gates Service Co., and Forte for $750,000[1]; the parties agreed that he would stay on as vice-president, and The Frank Gates Service Co., and Forte would continue to lease the office space. On April 1, 2009, Easler and Risk Management Solutions ("Risk Management")[2] entered into an employment agreement, which contained a forum selection clause providing in relevant part:

---

[1] There is no signed agreement to this effect in the record.

[2] The employment agreement listed Risk Management, Inc., as "Company" and Easler as "Employee"; the copy of the agreement contained in the record was not signed by Risk Management. The employment agreement was attached to a cover letter signed by Adrienne Paler, Senior Vice President of Avizent, on letterhead emblazoned, "AVIZENT™ Frank Gates Service Co./Attenta," which letter stated that Avizent/Forte offered Easler the position of Vice President of East Operations. Also attached to the letter was a confidentiality agreement between "Company" – Risk Management Solutions, Inc., and "Employee" – Easler – indicating that "Company desires to employ Employee as Company's Vice President, East Operations for Forte; the confidentiality agreement was signed by Easler and Adrienne Paler on behalf of "Company: Risk Management Solutions, Inc."

*Any action arising out of or relating in any way to this Agreement, or Employee's employment relationship with Company, shall be brought and maintained only in the state and federal courts sitting in Franklin County, Ohio.* The parties consent to the exclusive jurisdiction and venue in those courts to the greatest extent possible under law, whether or not either of them is now or hereafter becomes a resident of a different jurisdiction.[3]

The plaintiffs allege that the defendants later terminated Easler without cause, failed to pay him severance as required under the employment agreement, and stopped paying rent on the Buckhead commercial property in violation of the lease agreement. On March 5, 2010, Easler filed two separate actions in Fulton Magistrate Court against The Frank Gates Service Co., d/b/a Avizent/Forte, one for unpaid rent and the other for breach of an alleged verbal agreement to pay his phone charges; Easler brought both actions as "Easler d/b/a DMC," and neither complaint mentioned the alleged employment agreement. The Frank Gates Service Co., filed answers and counterclaims in both cases. In the counterclaims, The Frank Gates Service Co., alleged that although the employment agreement provided that customers should have paid it directly for all goods and services beginning April 1, 2009, customers instead

---

[3] (Emphasis supplied).

3

made payments totaling approximately $64,000 directly to Easler, who refused to forward the money to The Frank Gates Service Co., resulting in conversion of the funds. The Frank Gates Service Co., also moved to consolidate the cases and remove them to superior court, and the magistrate court granted the motions.

On July 28, 2010, Easler filed a motion in the instant case to (1) substitute DMC as the party plaintiff, (2) add Forte, Inc., as a defendant, and (3) amend the complaint, and the trial court granted the motion. In the amended complaint, DMC sought only damages for breach of the lease agreement and reimbursement for use of a cell phone account belonging to DMC. DMC subsequently moved for summary judgment. The trial court denied DMC's motion for summary judgment, concluding that issues of fact remained as to the claims for breach of the lease and for reimbursement of cell phone charges.

On December 8, 2011, the week before trial, the defendants filed a motion to amend their counterclaims to add Easler as a counterclaim-defendant. On the day trial was scheduled to begin, the trial court denied the motion, noting (1) that DMC had repeatedly argued that the counterclaims were improper against DMC and that Easler was no longer a party to the action; and (2) that any claims arising out of the employment agreement were required to be litigated in Ohio. During the course of the

4

ensuing trial, the trial court granted a mistrial. The trial court then orally granted the defendants' motion to amend their counterclaim to add AIM and Easler as parties.

On December 22, 2011, DMC filed a motion for leave of court (1) to add Risk Management and KRG Capital Partners, LLC, as defendants; and (2) to amend the complaint, noting therein that the trial court had granted the defendants' motion to add Easler and AIM as parties and that the counterclaims asserted against DMC would "require an analysis and resolution of the terms of the purchase/sale of Mr. Easler's company, as well as Mr. Easler's employment with Defendants"; DMC attached a copy of the employment agreement to the motion as an exhibit. On January 19, 2012, the defendants filed a brief in opposition to DMC's motion to add party plaintiffs and to amend the complaint, noting that any claims against Risk Management arose out of the employment agreement and were therefore required to be litigated in Ohio pursuant to the forum selection clause. The proposed second amended complaint included a claim for breach of the employment agreement.

Thereafter, on June 11, 2012, the defendants filed a motion to dismiss based on lack of personal jurisdiction and improper venue based on the forum selection clause contained in the employment agreement. On November 5, 2012, the trial court granted the defendants' motion to dismiss, concluding that

5

the claims in . . . Easler's original petition, Defendants' counter-claims[,] and the claims in Plaintiffs' Second Amended Petition all arise out of or relate to the [employment a]greement. . . . Defendants have not waived the forum selection clause by introducing the employment agreement in their counterclaim because the counterclaim was compulsory. The Court notes that while . . . Easler and AIM, Inc. were added as parties by Defendant[s], this was done after . . . [DMC] was substituted as Plaintiff instead of the original Plaintiff, . . . Easler d/b/a AIM. . . . Accordingly, at the time of the answer, Defendant[s were] required to bring any claims [they] had arising out of the same transaction against . . . Easler d/b/a . . . [DMC] or their alter egos.

This appeal followed.

It is undisputed that the forum selection clause is enforceable and applies to the claims alleged in the plaintiffs' second amended complaint. The plaintiffs, however, argue that the defendants waived venue and jurisdiction defenses based on the forum selection clause.

In Georgia, although "forum selection clauses are prima facie valid, such clauses are essentially no more than contractual provisions, and as such may be waived."[4] It is well-settled that

---

[4] (Citations omitted.) *Euler-Siac S.P.A. v. Drama Marble Co., Inc.*, 274 Ga. App. 252, 254 (1) (617 SE2d 203) (2005). See also *Rice v. Champion Bldgs., Inc.*, 288 Ga. App. 597, 600 (2) (654 SE2d 390) (2007).

personal jurisdiction and venue are generally defenses that may be waived if not raised at the proper time. Although a motion to set aside judgment for lack of jurisdiction may be filed at any time pursuant to OCGA § 9-11-60 (f), a waiver of the defenses of lack of personal jurisdiction and venue occurs under OCGA § 9-11-12 (h) (1) (B) when a Georgia resident who has received service of process fails to raise these defenses at the earliest opportunity.[5]

1. *The Frank Gates Service Co./Forte.* The Frank Gates Service Co. d/b/a Forte, specifically alleged in its April 2010 counterclaims in magistrate court that Easler converted funds that should have been paid directly to The Frank Gates Service Co., in violation of his employment agreement. The Frank Gates Service Co., however, failed to assert at that time its venue and jurisdiction defenses based on the forum selection clause in the employment agreement. Approximately twenty months later, after DMC was substituted for Easler as plaintiff, the defendants moved on the eve of the December 2011 trial to amend their counterclaims to add Easler as a counterclaim-defendant; the trial court denied the motion based in part upon a finding that any claims arising out of the employment agreement would have to be litigated in Ohio. The trial court subsequently orally granted the defendants' motion to amend

---

[5] (Citations omitted.) *Euler-Siac S.P.A.*, 274 Ga. App. at 254-255 (1).

7

their counterclaim to assert claims against Easler immediately following the entry of a mistrial in December 2011. Nevertheless, The Frank Gates Service Co. and Forte did not file a motion to dismiss the case on the grounds of improper venue and jurisdiction until June 2012. Under these circumstances, we conclude that The Frank Gates Service Co. and Forte waived their venue and jurisdiction defenses based on the forum selection clause by failing to raise them at the earliest opportunity.[6] Accordingly, the trial court's dismissal of The Frank Gates Service Co. and Forte is reversed.

---

[6] See id. at 255 (1). We reject The Frank Gates Service Co.'s argument that because its counterclaims were compulsory, it did not waive the forum selection clause by introducing the employment agreement. Contrary to The Frank Gates Service Co.'s contention, *Antec Corp. v. Popcorn Channel, L.P.*, 225 Ga. App. 1, 3 (3) (482 SE2d 509) (1997), does not stand for the proposition that a defendant's assertion of a compulsory counterclaim relieves the defendant of its obligation to raise its venue and jurisdiction defenses in its answer or by motion pursuant to OCGA § 9-11-12 (b) to avoid waiving them. See *Riggio v. Lawson*, 204 Ga. App. 774, 775 (1) (420 SE2d 613) (1992) (holding that the assertion of a compulsory counterclaim does not waive defenses of improper venue and lack of personal jurisdiction that were raised in the defendant's answer). Thus, The Frank Gates Service Co. waived its venue and jurisdiction defenses by failing to assert them in its answer and counterclaim or by motion pursuant to OCGA § 9-11-12 (b). We find no merit in its argument that the failure to assert them did not constitute a waiver of the defenses simply because the employment agreement was not at issue once DMC was subsequently substituted as plaintiff for Easler.

8

2. *Risk Management.* Risk Management, however, was not an initial party to the litigation. On June 13, 2012, the trial court granted the plaintiffs' motion for leave to add Risk Management Solutions as a party defendant, and Risk Management was served with the second amended complaint until July 19, 2012. On August 20, 2012, Risk Management filed its answer and defenses asserting its reliance on the forum selection clause, as well as a motion to dismiss based on the clause. Under these circumstances, we conclude that Risk Management asserted its venue and jurisdiction defenses regarding the forum selection clauses at the earliest opportunity. Accordingly, we affirm the trial court's dismissal of the plaintiffs' claims against Risk Management.

*Judgment affirmed in part and reversed in part. McFadden and Boggs, JJ., concur.*